UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GARY FOUST,<br><br>Plaintiff,<br><br>v.<br><br>BAYVIEW LOAN SERVICING, a Delaware limited liability company, et al.,<br><br>Defendants. | Case No. 4:16-CV-05001-LRS<br><br>ORDER GRANTING M&T BANK AND NORTHWEST TRUSTEE SERVICES MOTIONS FOR SUMMARY JUDGMENT; AND DENYING IN PART AND GRANTING IN PART DEFENDANT BAYVIEW'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the summary judgment motions of the three Defendants: Defendant Bayview Loan Servicing's Motion for Summary Judgment or in the Alternative Summary Adjudication (ECF No. 28, 29, 31) and the responsive materials (ECF Nos. 42, 45, 48, 49, 50, 52, 53); M&T Bank Corporation's Motion for Summary Judgment or in the Alternative Summary Adjudication (ECF No. 33) and the responsive materials (ECF Nos. 43, 46, 48, 49, 50, 54, 55); and Northwest Trustee Services, LLC's Motion for Summary Judgment or in the Alternative Summary Adjudication (ECF No. 24, 26) and the responsive materials (ECF Nos. 44, 47, 48, 49, 50, 56, 57). Oral argument was held on May 16, 2017. Plaintiff,

Gary Foust, was represented by Robert McMillen. Gregor Hensrude appeared on behalf of the Defendants.

## I. BACKGROUND

Each party has set forth separate statements of fact. The court places these largely undisputed facts in chronological order.

### A. Activities Prior to September 4, 2015 Sale

In 2007, Plaintiff, Gary Foust purchased and resided at real property located at 3008 Wernett Road in Pasco, Washington. M&T Bank ("the Bank") was assigned the loan against the property, whose original amount was $125,000. Foust filed for divorce in June 2014. Foust admits that during his divorce he began withholding mortgage payments because he was uncertain how the asset would be allocated in the divorce proceedings. (ECF No. 31, Ex. A. at 38). As a consequence, Northwest Trustee Services, LLC ("NWTS") issued and recorded a Notice of Foreclosure Sale dated April 30, 2015 advising Foust that "unless the default is cured, your property will be sold at auction on September 4, 2015." (ECF No. 48, Ex. C). The Notice of Foreclosure also warned that the default must be cured prior to the eleventh day before the date of the sale in order to discontinue the sale. Foust stated in his deposition that he "never really paid attention" to the paperwork he received. (ECF No. 31, Ex. A).

In July 2015, Foust's divorce was finalized and he was awarded the home, along

with the debt associated with the home. (ECF No. 31, Ex. A. at 47). After the divorce, Foust began working with Bayview Loan Servicing ("Bayview"), the default servicer for the Bank, regarding curing the arrears on his home loan. (ECF No. 53, SOF No. 1). One week prior to the sale, August 28, 2015, Bayview employee Antonio Acosta informed Foust in a phone call that the foreclosure sale was scheduled for Friday, September 4, 2015.

In the afternoon of Wednesday, September 2, 2015, Foust called Bayview to set up a plan to "redeem" his mortgage. (ECF No. 29, SOF No. 1). The phone call was recorded. Foust stated to Acosta: "I want to get this payment done and taken care of." Acosta established $19,840.74 as the amount in arrears that would have to be paid to M&T Bank to stop the sale. (ECF No. 29, SOF No. 2). Acosta twice informed Foust to send the money overnight given that the sale was just two days away. (ECF No. 29, SOF No. 3; ECF No. 50-1 at 19-20). He provided Foust the address for the Bank in Baltimore, Maryland and advised: "And then when you overnight it they're gonna give you a tracking number and if you would please call me with that tracking number so I can post it and try to get it posted as soon as possible before the sale date." (ECF No. 50-1, at 20). Foust indicated "I'll send it out today" [September 2, 2015] and Acosta reassured Foust that he "should be okay" overnighting it that day and confirmed that "as soon as I see that it posts I'll stop the foreclosure." (ECF No. 29, SOF No. 4).

Foust did not send payment on September 2, 2015 or use an overnight service. Foust's payment arrived Tuesday, September 8, 2015, four days after the sale. (ECF No. 29, SOF No. 5).

On Thursday, September 3, 2015, Foust mailed the check using the U.S. Postal Service. (ECF No. 29, SOF No. 4). Foust called Bayview while at the Post Office and reached Bayview Representative, Pedro Hatz (ECF No. 50, at 26), as Acosta had already left work for the day. Foust believed Bayview would "stop the sale as soon as they were able to track the package to see the money was on its way." (ECF No. 49 at 4). Foust informed Hatz that he was "at the post office with the payment to send off and he wanted me to give him a confirmation number and the house forecloses on the 4th, tomorrow, so he was going to stop the foreclosure." (ECF No. 50-1 at 25). Hatz indicated he would make a note that Foust had mailed the payment and that he should, "*Yeah, just drop it in the mail and they'll process the payment as soon as they receive…*" *Id.* (emphasis added). After informing Hatz that payment would not arrive until Tuesday, Foust asked "It won't go into foreclosure right? It should be stopped, right?" Hatz responded, "I don't have an answer for you." (ECF No. 50 at 26). Foust asked "how do we stop the foreclosure?" Hatz said, "Well you're gonna have to talk to him tomorrow. Um, I, I don't have uh, I do not have the foreclosure date or how to stop that and he already left." (ECF No. 50 at 26). Foust provided the tracking number and while standing at the mail counter asked Hatz

about the mail service:

> FOUST: Which one do you want? Do you want it express mail or do you want it priority?
> HATZ: Well the fastest the better, overnight.
> FOUST: Whatever's faster he says. She says there really isn't any faster because of the holiday.
> MAIL CLERK: The fastest we can get it there is Tuesday [September 8].
> FOUST: Tuesday.
> HATZ: Okay.
> FOUST: She says Tuesday is the fastest they can get it there. He said okay.

(ECF No. 50 at 27).

**B. Foreclosure Sale and Post-Sale Activities**

On the morning of September 4, 2015, Defendant Northwest Trustee Services, LLC ("NWTS") conducted the sale of Foust's property. The purchaser of the property was a third party, Shalom Investments, Inc. (ECF No. 1, ¶2.18). Foust learned of the sale when he received a knock on his door early in the afternoon from an individual claiming to be the purchaser. (ECF No. 49 at 3). Foust then called Bayview's Acosta. Acosta confirmed the tracking number and asked for a copy of the cashier's check, something he had not previously requested, to give to Bayview's "coordinator," because "there's nothing we can do to stop it unless we have proof that it's that amount." Foust advised: "I already lost it but it was, you can trust me its covering the full amount, nineteen thousand eight hundred and four dollars and seventy six cents." (ECF No. 50 at 33). Acosta reiterated that had Foust sent it "next day air" "it would have come in today and we'd have no issue." (ECF No. 50 at 34-

35).

Shortly after the sale, but before the payment had arrived, Bayview contacted NWTS and placed a hold on the transfer of the deed to the property. Email exchanges in the record document that on September 4, Bayview staff initiated discussions as to whether Bayview had the option to rescind the sale and the potential cost of rescission. (ECF No. 48 at Ex. G).

The payment arrived at the Bank on Tuesday, September 8, 2015 at 9:07 a.m.  A series of emails between Bayview employees and NWTS occurred this day:

- Early in the morning (before payment was received), Bayview's "Foreclosure Coordinator" Cindy Marin contacted NWTS's Vonnie McElligott and asked her to "advise if it would be possible to have this sale rescinded and what the costs would be." (ECF No. 48-10, Ex. J).

- McElligott responded: "Are you going to accept the funds and instructing us to rescind.  If so we will reach out to the 3rd party to determine if they will walk away and/or what they will require." *Id*.

- Marin responded to McElligott that she was waiting for a response from a manager. *Id*.

- McElligott responded to Marin writing, "My hands are tied until we are told specifically what you guys want to do.  Borrower has already contacted counsel." *Id*.

- At 5:43 p.m. Bayview employee Eddie Acevedo Jr. emailed Marin stating, "The funds still have not been received and should have been received today. Proceed with the sale and do not rescind the sale." (ECF No. 48-10, Bates 00492). Marin immediately forwarded Acevedo's email to McElligott.

- Noting the error in Acevedo's email, McElligott responded to Marin that "borrower gave us the USPS tracking info" and "looks like the package was delivered this morning."

The next day, on September 9, 2015, Acevedo sent an email to Marin stating: "I advise[] the customer last night that we will not be able to rescind the sale and that we will have those funds sent back to him." (ECF No. 48, Ex. J at Bates BAYVIEW000489). The Trustee's Deed was filed on September 10, 2015. (ECF No. 48, Ex. C).

Around the time Foust was advised of the decision to let the sale stand, Foust received a 15-page letter from Bayview's Acosta dated September 4, 2015, the date of the sale. The letter stated that Bayview was "here to help you…work with us on a resolution for any issues that affect your ability to make timely mortgage payments…" (ECF No. 49, Ex. A). The letter encouraged Foust to respond by providing information and indicated "TO RECEIVE HELP WITH OUR MORTAGE YOU MUST ACT BY: *OCTOBER 4*, 2015!" *Id*.

A letter dated September 30, 2015 on M&T Bank letterhead and signed by

Bayview returned Foust's payment. (ECF No. 49, Ex. B). The letter stated: [u]nfortunately, at this time we can only accept payment of the full amount past due…The total amount due on your account is now $200079.53." *Id*. The letter erroneously advised the account was "being prepared for foreclosure." *Id*.

**C. Allegations in the Complaint**

On January 5, 2016, Foust filed this lawsuit against Bayview, NWTS, and M&T Bank. The Complaint alleges two federal and three state law causes of action. First, he alleges Bayview and the bank violated the Fair Debt Collection Practices Act ("FDCPA") by making "false, unfair, deceptive and misleading representations" by "representing to the Plaintiff that the mortgage foreclosure would stop if Foust tendered the arrearage less than eleven (11) days before the foreclosure sale in a manner inconsistent with RCW 61.24.040 and then nevertheless conducting the foreclosure sale." ECF No. 1, ¶ 3.1. Second, he alleges Bayview and the Bank violated the Dodd-Frank Wall Street Reform and Consumer Protection Act. ECF No. 1, ¶ 3.2. Third, he alleges all of the Defendants violated Washington state Consumer Protection Act ("CPA") and "Debt Collector Licensing laws", and committed the torts of intentional misrepresentation and fraud. ECF No. 1, ¶¶ 3.3-3.5. Foust alleges he has lost thousands of dollars in equity he had in the home. (ECF No. 1 at ¶2.8). Plaintiff seeks damages, statutory damages, treble damages, and attorney fees and costs. Defendants deny the claims.

In Response to the Motions for Summary Judgment, Foust has "withdrawn" or failed to oppose dismissal of all his claims except the FDCPA and CPA claims against the Bank and Bayview, and the CPA claim against NWT.

The discovery period is closed. A jury trial is set for August 28, 2017.

## II.    STANDARD OF REVIEW

In deciding motions under Federal Rule of Civil Procedure 56, the Court applies *Anderson, Celotex*, and their Ninth Circuit progeny. A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings" and "designate specific facts" in the record to show a trial is necessary to resolve genuine disputes of material fact. *Id*. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-

moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For summary judgment purposes, an issue must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" if it must be established by "sufficient evidence supporting the claimed factual dispute...to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (*quoting First Nat. Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)); *see also British Motor. Car Distrb. v. San Francisco Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering a motion for summary judgment, the court does not make findings

of fact or determine the credibility of witnesses, *Anderson*, 477 U.S. at 255; rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).

## III. DISCUSSION

### A. FEDERAL CLAIMS

The Fair Debt Collection Practices Act (FDCPA) "comprehensively regulates the conduct of debt collectors," and "is a strict liability statute." *Tourgeman v. Collins Financial Services, Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014)(quoting *Gonzales,* 660 F.3d at 1060–61). Section 1692e of the Act "broadly prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.' " *Id*. The elements to establish a claim under the FDCPA are: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. 15 U.S.C. § 1692 et seq.

The FDCPA defines "debt" as

any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a. The statute also provides, in relevant part, that the term "debt collector"

> means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Id.*

Sixteen practices which violate the FDCPA are set forth in a non-exhaustive list in the Act. Proscribed conduct includes, but is not limited to:

> (2) The false representation of—
> (A) the character, amount, or legal status of any debt,
> * * *
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> * * *
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. 1692e(10) is a "catchall" provision which can be violated in any number of ways.

In the Ninth Circuit, "a debt collector's liability under § 1692e of the FDCPA is an issue of law." *Gonzales, LLC v. Arrow Financial Servs. LLC*, 660 F.3d 1055, 1061 n. 4 (9th Cir. 2011) ("Because liability under § 1692e is an issue of law, Arrow's argument that this court should remand for a jury trial on liability necessarily fails. We recognize that in other circuits, whether a communication is likely to mislead the least-sophisticated debtor is an issue of fact."). The analysis is objective. *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

[It] takes into account whether the 'least sophisticated debtor would likely be misled by a communication. The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.' Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable.

....

In addition, '[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.' In other words, a debt collector's false or misleading representation must be "material" in order for it to be actionable under the FDCPA. The purpose of the FDCPA, 'to provide information that helps consumers to choose intelligently,' would not be furthered by creating liability as to immaterial information because 'by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).' Thus, 'false but non-material representations are not likely to mislead *the least sophisticated consumer* and therefore are not actionable under [section] 1692e.'

*Id.* (citations omitted); *accord Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir.2007) (cautioning that "if the debt collector has targeted a particularly vulnerable group," "the benchmark for deciding whether the communication is deceptive would be the competence of the substantial bottom fraction of that group").

### 1. FDCPA Claim Against Bayview

Bayview asserts that Plaintiff fails to state any facts that would qualify as violations of the FDCPA. (ECF No. 52 at 9). Plaintiff responds that (1) Bayview's communications in various phone calls prior to the foreclosure sale "misleadingly advised Foust that sending payment and providing the tracking number would

prevent the foreclosure sale of his home" and redeem his debt (ECF No. 42 at 10); and (2) Bayview's letter dated on the day of the foreclosure sale requesting financial information to avoid foreclosure was false and deceptive.

Bayview contends Plaintiff's claim fails because he lacks evidence that he was in fact misled and his declaration suggesting otherwise is a "sham affidavit." However, the standard for evaluating violation of the FDCPA is not whether Foust was confused or deceived, but "whether the hypothetical 'least sophisticated debtor' likely would be misled." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014). As noted above, Foust's claim in part rests upon representations by Bayview which allegedly: 1) misleadingly implied that providing a tracking number for his payment would avoid the sale of his property, yet Bayview failed to postpone the sale; and 2) misleadingly implied that providing the requested payment would redeem the debt, yet Bayview failed to determine when funds had been received before making the decision not to rescind the sale and dictated to NWTS to proceed with finalization of the sale.

Whether representations would mislead the least sophisticated consumer and violate 15 U.S.C. § 1692e is an issue of law in the 9th Circuit. Cross-motions for summary adjudication have not been filed. Defendant's request for summary dismissal of the claim pretrial is not justified unless it is so plainly apparent to the court that there is nothing deceptive-seeming about the representation such that

liability necessary fails. *See e.g., Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 776–77 (7th Cir.2007)(where a claim of deception rests entirely on the text of the communication it may be resolved at the motion to dismiss stage "if there was nothing deceptive-seeming about the communication")*; Muha v. Encore,* 558 F.3d 623, 629 ("defendant's letter was not so palpably misleading as to entitle the plaintiff[ ] to summary judgment, but neither was it so palpably not misleading as to entitle the defendant to summary judgment.").

The court cannot conclude as a matter of law that there was nothing deceptive-seeming about Bayview's presale representations to even the least-sophisticated consumer. The court emphasizes that "a literally true statement can still be misleading." *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1062 (9th Cir. 2001). Viewing the evidence in the light most favorable to Foust, Foust was told by Bayview: "they're gonna give you a tracking number and if you would please call me with that tracking number so I can post *it* and try to get *it* posted as soon as possible before the sale date," (ECF No. 50-1, at 20)(emphasis added), and "as soon as I see that *it* posts I'll stop the foreclosure" (ECF No. 29, SOF No. 4)(emphasis added). Then, as Foust was in the process of simultaneously mailing the payment and speaking to the Bayview representative on the phone, when told that the payment would not arrive until after the scheduled sale, Bayview's response was "okay."

The court recognizes that a savvy consumer faced with ambiguous language

given the entire context of these conversations might seek clarification of what "it" and "okay" meant, and also maintain proof of the mailed payment. The court is obligated to construe the representations from the perspective of the least sophisticated consumer who is under no obligation to seek explanation of confusing or misleading language. Ultimately, the misleading nature of these communications is compounded by the timing of *Bayview's* decision to offer Foust the opportunity to settle the debt just days before the sale and the high stakes accompanying this decision—a residence. Bayview's service-related confusion is documented in the record. When a representation by a debt collector, from the viewpoint of the least sophisticated consumer "implies the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril." *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011).

In regards to Bayview's letter dated the day of the foreclosure sale, the letter invited Foust to seek help from Bayview with his mortgage by the deadline of *October 4*, 2015. (ECF No. 49, Ex. A). Yet, on the day of the sale, Bayview apparently knew it did not intend to take any further action to stop the foreclosure as Foust had not made the payment. 15 U.S.C. § 1692e(5) (defining "false, deceptive or misleading" in part as "[t]he threat to take any action ... that is not intended to be taken"). Bayview argues that this letter does not violate 1692e even if it was false,

because by the time he received this letter, Foust already would have known that the foreclosure was a foregone conclusion since he failed to make the payment in time. It is well established that "[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir.2006) (internal quotation omitted).

Summary dismissal of Plaintiff's 1692e claims against Bayview is not warranted.

### 2. FDCPA Claim Against M&T Bank

As to the FDCPA claim asserted against M&T Bank, Foust's summary judgment Response contends the letter dated September 30, 2015 and sent to him on M&T letterhead following the foreclosure sale constitutes a per se violation of the FDCPA because it was a deceptive and misleading communication associated with M&T's attempt to collect a debt. (ECF No. 43 at 10). As M&T did not allegedly communicate with Foust until there was no "debt" to collect, the FDCPA does not apply. As the sale was already complete, though this communication was technically false, it was non-material under the FDCPA because given the sale was already complete, it neither contributes nor undermines the objective of making debt collectors provide information to help consumers choose intelligently. A statement cannot mislead unless it is material. In sum, other than contributing to the great

confusion, the false statement complained of does not constitute the deceptive practice contemplated by the FDCPA.

## B. STATE LAW CLAIMS

Though all federal claims against NWTS and M&T Bank have been dismissed, in the interest of judicial economy, the court will exercise supplemental jurisdiction and consider the state law claims asserted against these Defendants, as well as Bayview. *See* 28 U.S.C. § 1367(a). Under Washington law, a Consumer Protection Act (CPA) claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (1986).

### 1. CPA Claim Against NWTS

Plaintiff's CPA claim against NWTS turns on the two alleged facts (1) NWTS failed to inquire as to whether payment had been tendered or attempted to cure the default prior to conducting the trustee sale; and (2) NWTS failed to "exercise its independent discretion in exercising its duties" and investigate whether to rescind the sale, instead deferring to Bayview. Foust Response requests summary judgment in his favor, though he did not file a separate cross-motion. (ECF No. 44 at 15).

Plaintiff's claim fails because it is not supported by Washington law, which has eliminated the fiduciary duty courts had previously imposed on the trustee. Still,

Wash.Rev.Code § 61.24.010(4) requires a foreclosure trustee to act in good faith toward the borrower, beneficiary, and grantor. This duty "requires the trustee to remain impartial and protect the interests of all the parties." *Lyons v. U.S. Bank Nat. Ass'n,*, 181 Wash.2d 775, 787 (2014). The Washington state Supreme Court described this duty as:

> A foreclosure trustee must '*adequately inform' itself* regarding the purported beneficiary's right to foreclose, including, at a minimum, a "*cursory* investigation" to adhere to its duty of good faith.... [A] trustee must treat both sides equally and investigate possible issues using its independent judgment to adhere to its duty of good faith.

*Lyons v. U.S. Bank Natl Assoc.*, 181 Wash.2d 775 (2014) (internal quotation marks omitted)(emphasis added). A breach of these duties supports a claim for damages under the CPA.

The only evidence against NWTS is that it placed a hold on the transfer of the Trustee's Deed, it received communications from Bayview about the possibility of rescission, and it was aware Foust's mail had arrived on September 8, but that it was instructed to proceed with the sale. Here there is no showing that NWTS improperly deferred or breached any duty or reason why the trustee should not have foreclosed. *See e.g., Patrick v. Wells Fargo Bank, N.A.*, 196 Wash.App. 398 (2016)(as the Patricks did default, Patricks made no showing the trustee improperly deferred to the lender). The CPA claim against NWTS is dismissed.

## 2. CPA Claim against M&T Bank

Plaintiff contends the Bank has violated the CPA because its practice of having the reinstatement funds sent to the lender instead of the Trustee violates state law, Wash.Rev. Code § 61.24.090(7), and unnecessarily lengthens the process of cancelling the sale to the detriment of the borrower. It is not clear that the practice is unlawful when in fact the law simply states that the reinstatement funds (typically due eleven days prior to the sale) "shall be tendered to the trustee," which could be done upon receipt by the bank. Foust speculates that had Bayview directed the funds be sent to NWTS it is likely that the sale would have been postponed or rescinded. (ECF No. 43 at 14). This contention rests upon language of an agreement (Default Management Agreement) between the Bank and Bayview (ECF No. 48, Ex. F), which states that: "M&T to notify BLS when they received funds for a loan in active foreclosure before any funds are returned to customer. If funds are received to reinstate a loan in active foreclosure, M&T to notify BLS to stop foreclosure process." (ECF 48, Ex. F, Bates No. 000410).

This theory was not specifically pleaded nor apparently disclosed in discovery. A new factual basis for a claim may not be raised for the first time in summary judgment response. *See Navajo Nation v. U.S. Forest Serv*., 535 F.3d 1058, 1080 (9th Cir. 2008) ("Nevertheless, our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim

to the district court" *citing Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (" 'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings' ")); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (holding complaint did not satisfy the notice pleading requirements of Rule 8(a) because the complaint "gave the [defendants] no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment").

*However*, even if the factual basis for the claim had been pleaded, Plaintiff offers no evidence as to the public interest prong, the likelihood of repetition or capacity to deceive a substantial portion of the public. In the absence of evidence that the reinstatement practice of sending the funds to the bank was unfair and was anything but unique to Plaintiff, the court dismisses the CPA claim against the Bank.

### 3.  CPA Claim against Bayview

Plaintiff asserts three grounds for liability under the CPA against Bayview: (1) Bayview's failure to postpone or stop the foreclosure sale upon tender of the tracking number and the payment (ECF No. 42 at 13); (2) Bayview's failure to notify NWTS that Foust had tendered payment and notifying NWTS to finalize the foreclosure sale (ECF No. 42 at 13-17); and (3) the reinstatement practice between M&T Bank and Bayview.

The first and second grounds are logically related to Plaintiff's FDCPA claims

against Bayview. Bayview contends Plaintiff does not have evidence of public interest impact. However, in *Panag v. Farmers Ins. Co. of Wash.*, the Washington Supreme Court held that "the business of debt collection affects the public interest." 166 Wn.2d 27, 54 (2009). The CPA states that it is intended "to complement the existing body of federal law" governing unfair or deceptive acts. Wash.Rev.Code §19.86.920. Violations of the FDCPA satisfy the public interest element per se. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*, 105 Wash.2d 778 (1986)(the public interest element may be satisfied per se where there is a showing "that a statute has been violated which contains a specific legislative declaration of public interest impact."); *see also, Rose v. Bank of America, N.A.*, 2017 WL 1197822 (E.D.Wash. March 30, 2017)(unpublished)(holding the same). Accordingly, as the related FDCPA claims against Bayview survive, so do the CPA claims against Bayview based upon the same related facts.

However, Plaintiff's third asserted ground for relief based upon reinstatement practices fails for the same reasons it fails against M&T Bank.

## C. TRIAL

Following oral argument, the court requested supplemental briefing regarding the right to jury trial under the CPA given Plaintiff's jury demand. (ECF No. 1) The Washington state statute is silent on the issue. Both parties agree the right to jury trial under the CPA in this context does not appear expressly decided in Washington,

and therefore they assume the right exists. Plaintiff asserts he is entitled to a jury trial on the CPA claims as well as "factual issues related to the debtor's conduct" as they relate to liability under the FDCPA. Defendant contends that Plaintiff's CPA claim is entirely predicated upon the violation of the FDCPA, therefore, the court should first determine liability under the FDCPA and then present the CPA claim to a jury.

As indicated earlier, controlling Ninth Circuit authority holds that liability under the FDCPA is an issue of law for the court to decide and there is no right to jury trial on any part of the claim. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 n. 4 ("Because liability under § 1692e is an issue of law, Arrow's argument that this court should remand for a jury trial on liability necessarily fails. We recognize that in other circuits, whether a communication is likely to mislead the least-sophisticated debtor is an issue of fact."). If tried, Plaintiff's FDCPA claim against Bayview will be resolved by the court. Given the commonality of the claims, rather than bifurcated trial, a simultaneous bench and jury trial (with the court resolving the federal claim first) would require that witnesses testify only once.

The court strongly encourages the parties to re-evaluate their positions in light of the court's rulings herein. The very purpose of compromise "is to avoid the necessity of determining sharply contested and dubious issues." *In re California Associated Products Co.*, 183 F.2d 946, 949 (9th Cir. 1950).

Trial is currently set for **August 28, 2017** and pretrial conference on **August 15, 2017**. (ECF No. 41)    The court has been advised by counsel that the parties would like to try these matters instead on **October 2, 2017**.  It appears the court can accommodate this request, unless criminal matters should take precedent.  The court will issue an amended Scheduling Order extending all remaining pretrial deadlines and the trial.  This continuance does not alleviate the parties' duty under Federal Rule of Civil Procedure secure the "just, speedy, and inexpensive determination" of the action.  Any proposal regarding the timing and conduct of trial should be filed for consideration and determination by the court.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendant NWTS's Motion for Summary Judgment (**ECF No. 24**) and Defendant M&T Bank's Motion for Summary Judgment (**ECF No. 33**) are **GRANTED.**  Upon entry of Final Judgment, the Complaint and the claims therein asserted by the Plaintiff against Defendants NWTS and M&T Bank are **DISMSISED** with prejudice and without the award of costs.

2. Defendant Bayview's Motion for Summary Judgment (**ECF No. 28**) is **GRANTED IN PART** and **DENIED IN PART**.  The following claims survive against Bayview only: (1) FDCPA claim against Bayview based upon the pre-sale communications and the letter dated September 4, 2015; and (2) the state law CPA

claim against Bayview based upon a) Bayview's failure to stop the sale of the property upon tender of the tracking number and the payment (ECF No. 42 at 13); and b) after Foust had tendered payment, Bayview's failure to notify NWTS of the payment and direction to NWTS to finalize the sale.

3.   A separate amended scheduling order will follow.

DATED THIS 27th day of June, 2017.

*Lonny R. Suko*

_____
SENIOR U.S. DISTRICT COURT JUDGE